**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sunshine Media Group, Inc.; Sunshine Media I, Inc.; and Sunshine Media Advertising, Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> Michael Goldberg; and Montdor Medical Media, LLC, <br><br> Defendants. | No. CV-10-0761-PHX-DGC <br><br> **ORDER** |

Sunshine Media Group, Inc. ("Sunshine Group") is a custom content publishing company. Sunshine Media I, Inc. ("Sunshine Media") performs publishing functions for Sunshine Group. Sunshine Media Advertising, Inc. ("Sunshine Advertising") coordinates the advertising efforts of Sunshine Media's publications, including M.D. News.

Michael Goldberg is a former Independent Contractor Publisher ("ICP") of Sunshine Advertising. His contract with Sunshine Advertising was terminated on November 2, 2009. Goldberg subsequently started Montdor Medical Media, LLC ("Montdor"), publisher of New Jersey Physician magazine.

The Sunshine entities filed suit against Goldberg and Montdor on April 6, 2010. Doc. 1. The complaint asserts five claims: breach of contract against Goldberg, intentional interference with existing and prospective business relations against Goldberg and Montdor, inevitable disclosure/misappropriation of trade secrets and confidential information against Goldberg and Montdor, breach of the implied covenant of good faith and fair dealing against

Goldberg, and tortious interference with contract against Montdor. Doc. 1 at 10-17. Plaintiffs seek compensatory damages and injunctive relief. *Id*. at 17-19.

Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 25. The motion is fully briefed. Docs. 26, 27. No party has requested oral argument. For reasons that follow, the Court will grant the motion in part and deny it in part.

**I.     Nature of the Motion.**

In support of their motion to dismiss, Defendants rely on the declaration of David McDonald, CEO of the three Sunshine entities. Doc. 25. Plaintiffs submitted the declaration in support of their application for a preliminary injunction. Doc. 4-1 at 10-22. Defendants assert that their motion to dismiss is a proper Rule 12(b)(6) motion, as all facts set forth therein are based upon Plaintiffs' complaint, documents appended to that complaint, and a "party admission" contained in Mr. McDonald's declaration. Doc. 27 at 2.

Plaintiffs note, correctly, that the Court generally may not consider any matter that has not been presented in a "pleading" when deciding a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(d); *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Plaintiffs treat the motion to dismiss as one for summary judgment and argue that, because triable issues of fact exist, the entry of summary judgment is inappropriate. Doc. 26 at 2.

The Court agrees that Mr. McDonald's declaration is a matter outside of the pleadings, *see* Fed. R. Civ. P. 7(a), and was not filed in support of the complaint. Doc. 1. When ruling on a Rule 12(b)(6) motion, courts may consider the complaint, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs*, 551 U.S. at 322. "A fact of which a court may take judicial notice must be indisputable." *Ariz. Title Ins. & Trust Co. v. Realty Inv.*, 430 P.2d 934, 936 (Ariz. App. 1967). Mr. McDonald's statements do not qualify. The Court will decide Defendants' motion to dismiss under Rule 12(b)(6) without considering Mr. McDonald's declaration.

## II. Rule 12(b)(6) Standard.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the factual allegations "'are taken as true and construed in the light most favorable to the nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," demanding instead sufficient factual allegations to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

## III. Analysis.

### A. Third-Party Beneficiary Status.

On January 1, 2009, Sunshine Advertising and Goldberg executed an Independent Contractor Agreement ("Agreement") whereby Goldberg agreed to serve as the exclusive ICP for <u>M.D. News</u> in the New Jersey territory. Doc. 1 at 5. Plaintiffs assert that Sunshine Group and Sunshine Media are entitled to enforce the Agreement as third-party beneficiaries. Docs. 1 at 10, 26 at 8-9. Defendants argue that Goldberg had a contractual relationship only with Sunshine Advertising and that the Agreement does not provide third-party beneficiary status for Sunshine Group and Sunshine Media. Doc. 25 at 11.

The parties agree that in order to "recover under the third party beneficiary doctrine, the contract relied upon by the third party must reflect that the parties thereto intended to recognize him as a primary party in interest." *Stratton v. Inspiration Consol. Copper Co.*, 683 P.2d 327, 329 (Ariz. Ct. App. 1984); *see* Docs. 25 at 10, 26 at 8. "Not only must the benefit be intentional and direct, but the third person must be a real promissee." *Stratton*, 683 P.2d at 329. Furthermore, "the intent of the parties, as ascertained by the language used, must

control the interpretation of the contract." *Shattuck v. Precision-Toyota, Inc.*, 566 P.2d 1332, 1334 (Ariz. 1977).

In this case, the Court finds that neither Sunshine Media nor Sunshine Group qualifies for third-party beneficiary status under the Agreement. The Agreement was entered into by two parties: Sunshine Advertising (the "Corporation") and Goldberg (the "Contractor"). Doc. 1-1 at 3. While sections 6.3 and 6.4 of the Agreement refer to the Corporation's "affiliates," neither section indicates that these unnamed affiliates are the primary parties in interest or that the benefit to the unnamed affiliates is intentional and direct. *Id*. at 5. Further, in the event of a breach of those sections by Goldberg, section 6.5 specifies only the rights and remedies *the Corporation* (i.e. Sunshine Advertising) may enforce. *Id*.

Plaintiffs note that the Agreement was signed by Ken Minneti as a Vice President of Sunshine Media. Doc. 1-1 at 7, 9-10. The Court is unpersuaded by the argument that the inclusion of Mr. Minneti's title reflects a clear intent to benefit all Sunshine entities. Doc. 26 at 8. Including Mr. Minneti's title on the signature line indicates only that a Vice President from Sunshine Media had the authority to enter into a contract on behalf of Sunshine Advertising, not that Sunshine Media is the primary party to the Agreement or an intended beneficiary. Because the Agreement fails to identify Sunshine Media and Sunshine Group as the real promissees, these entities are not entitled to third-party beneficiary status under the Agreement. The Court will dismiss Plaintiffs Sunshine Group and Sunshine Media from counts one (breach of contract), four (breach of the implied covenant of good faith and fair dealing), and five (tortious interference with contract).

**B.  Breach of Contract.**

The Agreement between Sunshine Advertising and Goldberg contains a non-competition clause (section 6.4), a non-solicitation clause (section 6.4(ii)), and a confidentiality clause (section 6.3). Doc. 1-1 at 5.

**1.  Breach of The Non-Competition Provision in Section 6.4.**

Defendants contend that Sunshine Advertising has failed to state a claim that Goldberg's present business activities violate the two-year non-competition clause contained

in section 6.4 of the Agreement. Doc. 25 at 8. Defendants rely on the description of Sunshine Advertising's "business" provided in Mr. McDonald's declaration and argue that section 6.4 contains only a limitation on Goldberg's ability to compete with Sunshine Advertising for the *placement of ads in Sunshine publications*. *Id.* at 9.

Excluding Mr. McDonald's extra-pleading statements, the Court finds that Sunshine Advertising's complaint adequately states a claim to relief against Goldberg for breach of section 6.4. Section 6.4 provides:

> [Goldberg] shall not serve as, be a consultant to, or an employee, officer, agent, director or owner of another corporation, partnership or other entity that competes, *directly or indirectly*, with [Sunshine Advertising] in the Business within [New Jersey].

Doc. 1-1 at 5 (emphasis added). The complaint alleges that Goldberg "has held himself out as a publisher and 'corporate sales development' person" for Montdor and produces a "directly competing publication in New Jersey." Doc. 1 at 9-10. Plaintiff contends that these activities constitute *direct* competition by seeking to reduce Sunshine Advertising's market share in the region and solicit potential Sunshine Advertising customers to instead place advertisements or purchase content in his magazine. *Id.* Plaintiff further alleges that Goldberg's publication of New Jersey Physician "is direct competition with M.D. News and Sunshine Media" and thus constitutes *indirect* competition with Sunshine Advertising. *Id.* They suggest that, because of the symbiotic relationship between the Sunshine entities, "competition with one Sunshine entity detrimentally affects, and constitutes competition with, the other Sunshine entities[.]" Doc. 26 at 5.

Taking these allegations as true, the Court finds sufficient factual allegations to draw the reasonable inference that Goldberg has violated the non-competition provision. *See Iqbal*, 129 S. Ct. at 1949. Defendants' motion to dismiss count one, for breach of section 6.4 of the Agreement, will be denied.

### 2. Breach of the Non-Solicitation Provision in Section 6.4(ii).

Defendants next argue that the complaint fails to state a claim that Goldberg violated section 6.4(ii), the non-solicitation clause of the Agreement. Doc. 25 at 6. That clause

provides that Goldberg may not "solicit, induce, or influence any supplier, customer, agent, consultant, independent contractor or other person or entity that has a business relationship with [Sunshine Advertising] to discontinue, reduce or modify such relationship with [Sunshine Advertising]." Doc. 1-1 at 5. Defendants assert that Plaintiff has not identified any relevant party, having a business relationship with Sunshine Advertising, who was improperly solicited, induced, or influenced by Goldberg. *Id.*

Plaintiff argues that an ICP is an agent of Sunshine Advertising, and that any person with whom an ICP contracts is a customer of Sunshine Advertising. Doc. 26 at 7. Plaintiff cites an e-mail Goldberg sent to 96 people with whom he developed a relationship as Sunshine Advertising's agent. Doc. 1-1 at 16-17. Plaintiff argues that the e-mail constitutes solicitation of Sunshine Advertising's customers in violation of section 6.4(ii) of the Agreement. *Id.*

The Court agrees with Plaintiff. Goldberg sent correspondence to 96 "Valued Clients, Loyal Readers and Friends" the day after his engagement ended, informing them that he would be producing his own magazine. Doc. 1-1 at 16. The e-mail tells recipients it is "important" for them to contact Goldberg at his personal e-mail address because "any correspondence sent to our MD NEWS address will not be received by us." *Id.* It is plausible that these recipients have business relationships with Sunshine Advertising and were solicited by Goldberg in violation of the Agreement. Docs. 1 at 8, 26 at 6-7. Defendants' motion to dismiss count one, for breach of section 6.4(ii) of the Agreement, will be denied.

**3.      Breach of the Confidentiality Provision in Section 6.3.**

Defendants argue that Plaintiff fails to adequately allege a cause of action against Goldberg for breach of section 6.3, prohibiting the use or disclosure of confidential information. Doc. 25 at 10. Defendants assert that the complaint lacks any material allegations that Goldberg used any information which was not publicly available or ascertainable by reviewing a readily available copy of M.D. News magazine. *Id.* at 12.

Plaintiff asserts that Goldberg received specialized knowledge and confidential information during his tenure with Sunshine Advertising, including Sunshine Media's

confidential Publisher Orientation Manual ("Manual"). Doc. 1 at 14. Plaintiff alleges, upon information and belief, that Goldberg has used the confidential information in his new business. *Id*. Parties are permitted to plead upon information and belief. Because this allegation sufficiently states a claim for breach of section 6.3, which prohibits the use as well as the disclosure of confidential information, Defendants' motion to dismiss this claim will be denied.

    **C.**    **Misappropriation of Trade Secrets and Confidential Information**.

Count three of the complaint asserts a claim for misappropriation of trade secrets and confidential information, including, without limitation, a Publisher Orientation Manual ("Manual") which was provided only to ICPs who signed a noncompetition and/or confidentiality agreement. Doc. 1 at 13-14. While Defendants do not separately move to dismiss count three, they do assert that Plaintiffs have failed to plead that Goldberg used any information which would constitute "confidential information" or a "trade secret" under A.R.S. § 44-401-407. Doc. 25 at 12.

The Uniform Trade Secrets Act ("Act"), A.R.S. §§ 44-401 et seq., defines a "trade secret" as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique or process that both:
>
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain secrecy.

A.R.S. § 401(4)(a)-(b). Here, Plaintiffs specifically assert that the Manual includes information from which the Sunshine entities derive independent economic value, as it "provides details on how to successfully operate an independent contractor business in the custom publishing field". Doc. 1 at 14. Plaintiffs further allege that the Manual is subject to reasonable efforts to maintain its confidentiality, including requiring a confidentiality agreement from all ICPs and stamping each page with the bold, capitalized word "Confidential." *Id.* As noted above, Plaintiffs plead upon information and belief that

Goldberg has used confidential information in his new business.

      **D.     Breach of the Implied Covenant of Good Faith and Fair Dealing.**

Count four of the complaint asserts a claim against Goldberg for breach of the implied covenant of good faith and fair dealing. Doc. 1 at 15-16. Defendants assert that Goldberg did not breach the contract with Sunshine Advertising. Doc. 25 at 4-6, 8-12. Therefore, they conclude, he cannot be liable for breaching the implied covenant of good faith and fair dealing. Doc. 25 at 14-15.

Defendants' argument fails. A breach of the implied covenant of good faith and fair dealing does not require a breach of contract. *See Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 29 (Ariz. 2002) (finding that a party may breach its duty of good faith without actually breaching an express covenant in the contract); *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1270 (Ariz. 1992) (holding that breach of an express covenant is not a necessary prerequisite to an action for bad faith).

Defendants further note that "an implied covenant of good faith and fair dealing cannot directly contradict an express contract term." *Kuehn v. Stanley*, 91 P.3d 346, 354 (Ariz. Ct. App. 2004). Plaintiff's complaint alleges that Goldberg breached the covenant of good faith and fair dealing by, "among other things, misappropriating Sunshine Media's confidential and proprietary information and producing a competing magazine in willful non-compliance with [the Agreement's] restrictive covenants." Doc. 1 at 16. Defendants do not cite any express contract terms providing Goldberg with authority to engage in these activities. Hence, Plaintiff's application of the implied covenant does not "directly contradict an express contract term." *Kuehn*, 91 P.3d at 354. Defendants' motion to dismiss count four will therefore be denied.

      **E.     Tortious Interference.**

Count two of the complaint asserts a claim against Goldberg and Montdor for tortious interference with business relationships (Doc. 1 at 12-13), and count five asserts a claim against Montdor for tortious interference with contract (*id.* at 16-17). The elements of a claim

for tortious interference are the existence of a contractual or business relationship, knowledge of the relationship on the part of the interferor, and intentional and improper interference causing damage to the relationship. *See Antwerp Diamond Exch. of Am., Inc. v. Better Bus. Bur. of Maricopa County, Inc.*, 637 P.2d 733, 740 (Ariz. 1981); *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1043 (Ariz. 1985).

### 1. Tortious Interference with Contract.

Plaintiff's complaint alleges that Montdor intentionally and improperly interfered with the Agreement by, "among other things, encouraging Goldberg: to compete with the Sunshine Entities; to solicit the Sunshine Entities' customers and to publish a magazine competitive with M.D. News; and to disclose and use the Sunshine Entities' confidential and proprietary information." Doc. 1 at 17.

Defendants contend that Plaintiff's claim that Montdor induced Goldberg to breach the Agreement with Sunshine Advertising fails because Goldberg did not breach the contract (an assertion based on Mr. McDonald's declaration). Doc. 25 at 13. This argument has been rejected above. They further contend that Goldberg, as a matter of law, cannot be liable for tortious interference with his own contract with Sunshine Advertising. *Id*. (citing *Wells Fargo*, 38 P.3d at n.19).

Plaintiffs correctly note that this cause of action is brought against Montdor, not Goldberg. Montdor was not a party to the Agreement and can be liable for tortious interference with that contract. Doc. 26 at 11 (citing *Spratt v. N. Auto, Corp.*, 958 F. Supp. 456, 464 (D. Ariz. 1996) (noting that "[i]nterference with contract requires, among other things, a contract between the plaintiff and a third party")). Defendants' motion to dismiss count five will therefore be denied.

### 2. Intentional Interference with Business Relations.

Plaintiffs brought this action against Goldberg and Montdor, alleging intentional interference with all three of the Sunshine entities' existing and prospective business relations with individuals and entities in the New Jersey area. Doc. 1 at 12.

The Court finds that Plaintiffs have adequately pled the first four elements required to

- 9 -

establish a claim of tortious interference. *See Antwerp*, 637 P.2d at 740. Plaintiffs' complaint alleges that the Sunshine entities have existing and prospective business relationships with an identifiable class of individuals and business entities; that Goldberg and Montdor have "first-hand knowledge" of these business relationships, due to Goldberg's personal experience as a former agent of Sunshine Advertising; that Goldberg and Montdor have acted intentionally to interfere with Plaintiffs' business relations by "among other things, communicating to Sunshine Media's existing and prospective customers that Goldberg is no longer associated with the Sunshine Entities and by producing a publication that is in direct competition with M.D. News"; and that they have suffered "significant damages" as a result of this interference, in an amount to be proven at trial. Doc. 1 at 8, 12-13.

In addition to these allegations, Plaintiffs must also plead sufficient facts to demonstrate that Defendants acted improperly. *Wagenseller*, 710 P.2d at 1043 (noting that unless the plaintiff is able to show the impropriety of the defendant's conduct, the conduct is not tortious).

### a. Montdor.

Defendants argue that Montdor has not acted improperly. They contend that Montdor is not subject to the Agreement and is thus free to compete with all of the Sunshine entities. Doc. 25 at 14. Defendants argue that Montdor's right of competition negates the element of "improper" interference. *Id*. (citing *Miller v. Hehlen*, 104 P.3d 193, 202 (Ariz. Ct. App. 2005)).

The Court agrees that Plaintiffs have failed to demonstrate that Montdor acted improperly. Plaintiffs assert that Montdor acted to interfere with their business relationships by "among other things, communicating to Sunshine Media's existing and prospective customers that Goldberg is no longer associated with the Sunshine Entities and by producing a publication that is in direct competition with M.D. News." Doc. 1 at 12. The Court rejects this argument for two reasons. First, there are no facts alleged actually connecting Montdor to the e-mail announcing Goldberg's separation from Sunshine. The complaint indicates that Montdor did not even exist at the time the e-mail was sent. Doc. 1 at 10. Second, as Montdor

1 was not bound by any restrictive covenants with Plaintiffs, it was not improper for Montdor to produce a publication that competes directly with M.D. News. *See Miller*, 104 P.3d at 202 (quoting *Bar J Bar Cattle Co. v. Pace*, 763 P.2d 545, 549 (Ariz. Ct. App. 1988) (finding "a competitor does not act improperly if his purpose at least in part is to advance his own economic interests")). Defendants' motion to dismiss count two will be granted as against Montdor.

### b. Goldberg.

Defendants also assert that Goldberg has not acted improperly. Defendants contend that, absent third-party beneficiary status for Plaintiffs Sunshine Media and Sunshine Group, Goldberg is free to compete with these entities. Doc. 25 at 14. They do not separately address Sunshine Advertising's claim of tortious interference with business relations as against Goldberg, other than to again assert (based on Mr. McDonald's declaration) that Goldberg did not violate the Agreement. *Id*. at 12-14.

Arizona courts consider seven factors in determining whether a defendant's interfering conduct was improper: the nature of the actor's conduct, the actor's motive, the interests of the other with which the actor's conduct interferes, the interests sought to be advanced by the actor, the social interests in protecting the freedom of action of the actor and contractual interests of the other, the proximity of the actor's conduct to the interference, and the relations between the parties. *Wagenseller*, 710 P.2d at 1042-43. The Court finds that several of the factors – the nature of the actor's conduct, the actor's motive, the proximity of the actor's conduct to the interference – plausibly suggest that Goldberg's interference with Plaintiffs' business relations was improper.

Plaintiffs' complaint alleges that Goldberg was contractually obligated not to compete directly or indirectly with Sunshine Advertising or solicit any party with whom Sunshine Advertising had a business relationship. (*See* count one). Further, Plaintiffs allege that prior to filing this lawsuit, the Sunshine entities contacted Goldberg's counsel to determine whether Goldberg intended to abide by the restrictive covenants of their Agreement. Doc. 1 at 9. Goldberg's counsel revealed that Goldberg would directly compete with M.D. News. *Id*.

This plausibly suggests that the nature of Goldberg's conduct was knowing and willful violation of the Agreement.

In considering Goldberg's motive, the complaint indicates that Goldberg sent an e-mail to "persons and entities with which the Sunshine Entities ha[d] a business relationship", encouraging recipients to contact him directly instead of Sunshine Media. Docs. 1 at 8, 1-1 at 16. This plausibly suggests that Goldberg's motive was to willfully and intentionally interfere with Plaintiffs' business relations.

Regarding the proximity of Goldberg's conduct to the interference, the complaint asserts that Goldberg directly contacted 96 entities with which Plaintiffs allege they had a business relationship. Doc. 1-1 at 16. He directly asked recipients to work with him, rather than Plaintiffs. *Id*. Further, Plaintiffs assert that Goldberg's publication "directly compete[s]" with Plaintiffs' publication. Doc. 1 at 9. These factual allegations plausibly indicate that Goldberg's conduct is closely and proximately related to any interference with Plaintiffs' business relations.

Because the complaint sufficiently alleges that Goldberg's alleged conduct was improper, Plaintiffs have stated a claim against Goldberg for intentional interference with business relations. Defendants' motion to dismiss count two will be denied as against Goldberg.

**IT IS ORDERED:**

1. Defendants' motion to dismiss (Doc. 25) is **granted in part** and **denied in part**. The motion is granted with respect to count one, as asserted by Sunshine Media and Sunshine Group; count two, as asserted against Montdor by all Plaintiffs; count four, as asserted by Sunshine Media and Sunshine Group; and count five, as asserted by Sunshine Media and Sunshine Group.

2. A case management conference is set for **August 11, 2010** at **3:00 p.m.**. (Doc. 35).

DATED this 22nd day of July, 2010.

*David G. Campbell*
United States District Judge